IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEREK M. WILLIAMS,

                Plaintiff,

v.

MICHAEL J. SCHULTZ and STACEY A. TILOT,

                Defendants.

OPINION and ORDER

22-cv-2-jdp

---

Plaintiff Derek Williams, appearing pro se, is a prisoner at Fox Lake Correctional Institution. Williams alleges that defendant prison staffers fabricated reasons for him to be placed on a special escort status, which led to him being placed in maximum-security status years longer than he believes was necessary. He seeks leave to proceed in forma pauperis with his case, and he has made an initial partial payment of the filing fee as previously directed by the court.

The next step is for me to screen Williams's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the case because Williams does not state claims for relief under due process or Eighth Amendment theories, and his equal protection "class of one" claim is foreclosed by the doctrine of qualified immunity.

ALLEGATIONS OF FACT

Williams alleges that from 2015 to 2021, security officials at his previous places of confinement placed him on a "3-Man Escort security restriction." Dkt. 1, at 3. I take him to be saying that this restriction contributed to him being forced to stay in maximum-security status when he could otherwise have been placed in medium security. Williams was not aware that he had formally been placed under this restriction and he was never given a chance to challenge the determination. He later found out that the escort restriction was requested by defendant Stacey Tilot, whose stated reason for the restriction was "relationship with staff that results in termination of staff, repetitive attempt to solicit, con-man." *Id.* at 4. The escort restriction was approved by defendant Michael Schultz. Williams admits that in 2003 he was involved in an inappropriate relationship with a prison employee who was terminated by the DOC, but that the other information is false: he never solicited staff for relationships, nor was there any other incident that would give one reason to call him a con man.

ANALYSIS

Williams contends that his right to due process was violated by Tilot and Williams fabricating negative information about him and then not being provided notice about the restriction or a way to remove it. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To state a § 1983 procedural due process claim, a plaintiff's allegations must demonstrate that he: (1) has a cognizable property or liberty interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). The Supreme Court has explained that a prisoner's

cognizable liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).

The direct consequence of defendants' actions—increased security during escorts—isn't nearly enough to state a liberty interest under this standard. Williams also says that the restriction forced him to be kept in maximum-security status for six years, and that the harsh conditions there harmed him psychologically, violating both his due process rights and his right against cruel and unusual punishment under the Eighth Amendment. He states that drug abuse and mental illness is rampant among those in maximum security, that he witnessed inmates assaulting other inmates, and that staff often locked units down and used incapacitating agents on the prisoners. But it is well-settled that decisions regarding whether an inmate belongs in minimum, medium, or maximum security are not sufficient to create a liberty interest supporting a due process claim. *See Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) ("A prisoner has no due process right to be housed in any particular facility."). Some of Williams's allegations about his experiences in maximum-security units are disturbing, but he doesn't provide enough detail to suggest that the day-to-day conditions in those units were so severe as to impose an atypical and significant hardship on him beyond the struggles of ordinary prison life. Nor does he state an Eighth Amendment claim: he doesn't plausibly suggest that defendants Tilot and Schultz were directly responsible for the conditions in those units, or that they were otherwise aware of specific significant risks of harm to the inmates there.

Willams also attempts to bring a "class of one" equal protection claim against defendants for singling him out for mistreatment by placing him on a three-person escort when "no other inmate in the history of the Wisconsin DOC" has ever faced such a restriction solely

3

for being involved with a staff member. Dkt. 1, at 7. A plaintiff may bring a "class-of-one" equal protection claim for being treated "intentionally . . . differently from others similarly situated" for no rational reason. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). But class-of-one claims are generally disfavored in the prison setting, particularly where they involve discretionary decision-making by prison officials, like in the employment and disciplinary contexts. *See Lewis v. Henneman*, No. 16-cv-733, 2018 WL 2390117, at *7 (W.D. Wis. May 24, 2018); *Talioferro v. Hepp*, No. 12-cv-921, 2013 WL 936609, at *6 (W.D. Wis. Mar. 11, 2013) (collecting cases).

For this reason, these types of claims are often resolved by the defense of qualified immunity. I have previously concluded in a similar case that prison staff were entitled to qualified immunity on class-of-one claims about allegedly false conduct reports. *See Lewis*, 2018 WL 2390117, at *7. A security decision like the escort here wasn't directly the result of a disciplinary proceeding, but it followed from his previous discipline for an inappropriate relationship with staff, and security decisions like these are discretionary, depending on individualized factors. Although defendants have not yet been served and so have not raised the affirmative defense of qualified immunity, I will do so here because the defense is obvious given Williams's allegations. *See Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). (Judges do not generally entertain affirmative defenses when conducting screening of complaint, but may do so "if [an affirmative defense] is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous."). Therefore, I will not let Williams proceed on a class-of-one claim.

ORDER

IT IS ORDERED that this case is DISMISSED. The clerk of court is directed to enter judgment for defendants and close the case.

Entered August 2, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge